IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL RUGGIERO,<br><br>                Plaintiff,<br><br>   v.<br><br>BRIAN NOCENTI, et al.,<br><br>                Defendants. | CIVIL ACTION<br>NO. 18-3047 |

## ORDER

**AND NOW**, this 30th day of June 2020, upon consideration of Defendant Brian Nocenti's Motion for Summary Judgment (Doc. No. 18), Plaintiff Michael Ruggiero's Memorandum of Law in Opposition to the Motion for Summary Judgment (Doc. No. 21), Defendant's Reply in Support of his Motion for Summary Judgment (Doc. No. 22), the arguments of counsel at the hearing held on February 11, 2020, and the supporting documents submitted by Plaintiff (Doc. No. 28), it is **ORDERED** that Defendant's Motion for Summary Judgment (Doc. No. 18) is **GRANTED IN PART** and **DENIED IN PART**.[1]

---

[1] This case involves the purported sale of collectable playing cards from the game "Magic: The Gathering" ("Magic Cards") from Defendant Brian Nocenti ("Defendant") to Plaintiff Michael Ruggiero ("Plaintiff"). Before the Court is Defendant's Motion for Summary Judgment. (Doc. No. 18.) For the reasons below, Defendant's Motion will be granted in part and denied in part. The Court will grant Defendant's Motion as it pertains to Counts II (Unjust Enrichment), IV (Contract Implied in Law), and V (Breach of the Implied Covenant of Good Faith and Fair Dealing), and will deny Defendant's Motion as it pertains to Counts I (Breach of Contract), III (Contract Implied in Fact), VI (Promissory Estoppel), VII (Fraud/Fraud in the Inducement), and VIII (Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL")).

    **I.**    **Background**

The Complaint states that in 2017, Plaintiff and Defendant negotiated a contract for the sale of 143 Magic Cards for $177,415.00, which Plaintiff had up to three years to pay. (Doc. No. 1 ¶

1.) Under the terms of the alleged agreement, Plaintiff was required to pay $70,000 within one year of June 26, 2017. (Id.) By May 18, 2018, Plaintiff had paid Defendant $40,000, which was financed by Plaintiff selling his own personal collection of Magic Cards. (Id.) Then, on May 29, 2018, Defendant informed Plaintiff that he was backing out of the alleged agreement and refunded Plaintiff's $40,000. (Id.) Consequently, Plaintiff filed this suit seeking to enforce the original terms of the alleged agreement or, in the alternative, seeking the difference between the contract price and the present value of the cards. (Id.)

The Complaint includes eight counts: (1) Breach of Contract and Specific Performance/Injunctive Relief; (2) Unjust Enrichment; (3) Contract Implied in Fact; (4) Contract Implied in Law; (5) Breach of the Implied Covenant of Good Faith and Fair Dealing; (6) Promissory Estoppel; (7) Fraud/Fraud in the Inducement; and (8) Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law. (See Doc. No. 1.) Defendant claims that he is entitled to summary judgment on all counts because, among other reasons, there was no signed, written agreement between the parties and the parties never agreed on payment terms. In opposition, Plaintiff argues that the parties had a valid, enforceable contract.

## II. Standard of Review

Summary judgment is proper if there is no genuine dispute of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. Smathers v. Multi-Tool, Inc., 298 F.3d 191, 194 (3d Cir. 2002); see also Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986). A mere scintilla of evidence in support of the non-moving party will not suffice; there must be evidence by which a jury could reasonably find for the non-moving party. Id. at 252.

In reviewing the record, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." Prowel v. Wise Bus. Forms, 579 F.3d 285, 286 (3d Cir. 2009). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. See Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150 (2000); see also Goodman v. Pa. Tpk. Comm'n, 293 F.3d 655, 665 (3d Cir. 2002).

## III. Analysis

The Court will analyze the Counts in the Complaint, viewing the facts in the light most favorable to Plaintiff, in turn.

### A. Count I: Breach of Contract and Specific Performance

Defendant argues that he is entitled to summary judgment on Plaintiff's breach of contract claim because (1) there is no signed, dated, written agreement between the parties, and (2) the

terms of the alleged contract are not sufficiently definite to be enforceable. (Doc. No. 18-1 at 7.)

Under Pennsylvania law, a breach of contract claim requires a plaintiff to prove (1) the existence of a contract; (2) a breach of a duty imposed by that contract; and (3) damages. Legendary Art, LLC v. Godard, 888 F. Supp. 2d 577, 582 (E.D. Pa. 2012). Accordingly, an enforceable contract has three elements: (1) a manifestation of an intent to be bound by the terms of the agreement, (2) sufficiently defined terms, and (3) an agreement supported by adequate consideration. Id. "The question of whether an undisputed set of facts establishes a contract is typically one of law, but where the facts are in dispute, the question is for the jury to decide." Id. "Contract formation is a matter of law ripe for determination by the Court if a binding contract could not exist under the undisputed set of facts." Ecore Int'l, Inc. v. Downey, 343 F. Supp. 3d 459, 489 (E.D. Pa. 2018). Further, "[w]hat was said and done by the parties as well as what was intended by what was said and done by them are questions of fact for the jury." Bennett v. Itochu Int'l, Inc., No. 09-CV-1819, 2012 WL 3627404, at *15 (E.D. Pa. Aug. 23, 2012), aff'd, 572 F. App'x 80 (3d Cir. 2014) (emphasis in original).

Generally, the first element of contract formation, manifestation of an intent to be bound, is established through evidence of offer and acceptance. Quandry Sols. Inc. v. Verifone Inc., No. CIV.A.07-097, 2009 WL 997041, at *8 (E.D. Pa. Apr. 13, 2009). "In some circumstances, however, '[a] manifestation of mutual assent may be made even though neither offer nor acceptance can be identified and even though the moment of formation cannot be determined.'" Id. (quoting Restatement (Second) of Contracts § 22(2) (1981)). Evidence of preliminary negotiations, or an agreement to enter into a binding contract in the future, does not alone constitute a contract. Id. "Conversely, it is equally well established in contract law that an agreement with open terms may nevertheless constitute an enforceable contract." Fleming Steel Co. v. Jacobs Eng'g Grp., Inc., 373 F. Supp. 3d 567, 584 (W.D. Pa. 2019).

Regarding the second element, sufficiently definite terms, Pennsylvania has adopted the Restatement (Second) of Contracts. Ecore Int'l, Inc. v. Downey, 343 F. Supp. 3d 459, 489 (E.D. Pa. 2018). The Restatement provides as follows:

> (1) Even though a manifestation of intention is intended to be understood as an offer, it cannot be accepted so as to form a contract unless the terms of the contract are reasonably certain.
>
> (2) The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy.
>
> (3) The fact that one or more terms of a proposed bargain are left open or uncertain may show that a manifestation of intention is not intended to be understood as an offer or as an acceptance.

Id. (quoting Restatement (Second) of Contracts § 33 (1981)).

"Incompleteness of terms is one of the primary reasons statements of preliminary negotiations are not deemed offers." Id. (quotations omitted.) However, the fact that an agreement omits an essential term, such as price, does not negate contract formation, so long as the parties otherwise manifested their mutual assent to the agreement and the terms of that agreement were sufficiently definite. Id. But, where there is no agreement, or any discussion of essential terms, such as time or manner of performance, price, or consideration, the agreement is too indefinite for a party to reasonably believe that it could be enforceable. Id.

Finally, the third element, consideration, is an act, forbearance, or return promise bargained for and given in exchange for the original promise. Id. The parties make no arguments that any agreement would have lacked consideration.

Here, viewing the facts in the light most favorable to Plaintiff, genuine issues of material fact remain surrounding the alleged formation of a contract.

The parties first met in-person at Defendant's house on March 11, 2017 to discuss the purchase of the Magic Cards in question. (Doc. No. 1 ¶ 9.) After this visit, the parties began collaborating on an Excel spreadsheet of Magic Cards, or "Beta cards," that included the name, grade, and price of each card (Doc. No. 21 at 6; Doc. No. 22 at 1), although the parties disagree whether this was the list of cards that Plaintiff was interested in buying from Defendant. (Doc. No. 21 at 6; Doc. No. 22 at 1.) The parties met again on May 7, 2017 to discuss the purchase of the cards. (Doc. No. 18-3 at 49-50.) After this meeting, Defendant sent a message to Plaintiff over Facebook Messenger stating, "I just wanted to thank you for taking the time to make the trip down today. You are going to have a wonderful set and have the opportunity to make the set #1 again. I'm very happy to see these cards going to such a collector." (Doc. No. 18-3 at 49.)

After these in-person meetings, the parties discussed the purchase of Magic Cards over e-mail and Facebook Messenger. The parties agree that no written, signed agreement regarding the purchase of the Cards exists, but disagree whether the Facebook chat and e-mails between the parties constitute a contract.

On May 28, 2017, Defendant sent Plaintiff a message over Facebook Messenger communicating, "If you can send me an email in regards to the list of cards you committed to that would help me as to what I need to list and what needs to go in the hold/sold pile." (Doc. No. 18-3 at 47.) On May 29, 2017, Plaintiff sent an e-mail to Defendant laying out the Cards that Defendant agreed to hold for him and summarizing cards he was interested in purchasing. (Doc. No. 18-5.) Plaintiff also stated that he planned to pay Defendant $70,000 "in the first year," and he was "willing to sell most/all of the cards" that he had shown Defendant. (Id.) Plaintiff ended the e-mail asking when Defendant would like to receive the first payment. (Id.) Defendant testified, however, that he did not see the May 29, 2017 e-mail until one year after it was sent and never responded to it. (Doc. No. 28-1, Def. Dep. 146:17-147:7.)

Over the course of the next year, the parties communicated regularly via Facebook Messenger. These discussions included talks about Plaintiff's payments to Defendant and the timing of these payments. For example, on July 4, 2017, Defendant sent a message to Plaintiff stating, "Not trying to push you but [sic] realistically what do you think we're looking at on our timeline for the pile of betas?" (Doc. No. 18-3 at 28.) The "betas" were the Magic Cards that Plaintiff attempted to purchase from Defendant. Defendant further stated that "I know we had talked about 1, 2, and 3 year options just didn't know which we were targeting for or if we were leaving it open-ended." (Id.) Plaintiff responded that the payment timeframe depended on what sold of his, and he would "make sure [Defendant] got $70k within [sic] the next 12 months" although he "would like to get [Defendant] $70k asap" and he would send the money his way as soon as he had it. (Id. at 27.) Defendant responded, thanking Plaintiff "for clearing this up." (Id.) When Plaintiff asked Defendant if he needed a certain amount of money from him at a certain time, Defendant stated no, he was "just trying to see where [he]'s going to be so he can plan accordingly" and break ground on his home. (Id. at 26-27.)

In this same exchange, the parties discussed the nature of their dealings, and Plaintiff asked Defendant if he had "made agreements like ours [sic] before." (Id. at 26.) Defendant responded saying this was the largest sale he has made on this kind of timeline, and he has made larger purchases, but with upfront payments. (Id.) Plaintiff then asked Defendant, "How come you agreed to do this with me if I may ask?" (Id.) Defendant responded that he "wanted the cards to stay together" and "someone else to be able to enjoy them the way I did and build upon the set like I would have." (Id.)

About six months later, on January 23, 2018, Plaintiff messaged Defendant informing him of individuals who were interested in buying his Magic Cards, and stated, "I am not looking to test your patience, so as I've stated previously, please let me know if you need a payment prior to me working out any of these potential deals. The gentleman who was from Arizona seems to be someone who talks more than he does anything else so I'm not counting on him. But when I sell these cards, the majority of that $ goes to you." (Doc. No. 18-3 at 10.) Defendant responded, "I'm happy to hear you have some bites on your cards. Just wanted to make sure we are on track for June. It sounds like hitting that target shouldn't be difficult. I'm planning on starting my home project in late April or May so this will line up nicely." (Id.) On March 18, 2018, Plaintiff asked Defendant, "You want $70k by the end of [J]une and that will work best for you?" Defendant responded, "That would be perfect."

These messages do not contain, however, a total purchase price for the Magic Cards. Plaintiff claims that the total purchase price was $177,415 (Doc. No. 1 ¶ 13), which is the total amount of the "Price" column in the shared Excel spreadsheet (Doc. No. 18-3 at 189.) Defendant, on the other hand, asserts that there is "no document resembling a contract" where the parties agreed to that price.

On May 29, 2018, Defendant informed Plaintiff that he was no longer selling him the Magic Cards and refunded the payments that Plaintiff had paid him to date, which amounted to $40,000. (Doc. No. 18-3 at 3.) Defendant stated, "We made an agreement in May I have an email stating from you that we agreed on a price and a payment of 70k to be made within a

5

year and that was agreed upon prior to the email which is dated May 29, 2017." (Id.) Plaintiff wrote that he thought there was a misunderstanding because they had agreed he had until the end of June to make the payments, but he would honor the May 29 deadline. (Id.) Defendant refused. (Id. at 1-3.)

Giving Plaintiff the benefit of all favorable inferences in the record, a reasonable jury could find a contract was formed between the parties. The record reflects that the parties maintained the Excel spreadsheet with the list of Magic Cards in question and communicated over the course of approximately one year about their "agreement" and "deal." Plaintiff's allegations that this spreadsheet and these communications were governed by an agreement is plausible. While Defendant is correct that the record does not contain a formal, written agreement with the parties' signatures, the record contains communications and deposition testimony from which a reasonable jury could infer that the parties intended to enter into a contract.

Moreover, the record evidence reflects that a reasonable jury could find the terms of the parties' agreement sufficiently definite to form a contract. The written communications between the parties show that Defendant was expecting the $70,000 payment by June 2018. The parties also discussed one, two, or three-year payment plans depending on what cards Plaintiff could sell to finance the transaction, and Plaintiff testified at his deposition that he had up to three years to complete the transaction. (Doc. No. 28-2, Plaintiff Dep. 68:8-11.) Although the parties' communications do not contain a total purchase price, the price term does not have to be supplied in a contract for it to be enforceable, as long as the parties have agreed upon a practicable method of determine the price with reasonable certainty, such as through a market standard. See Feldman v. Google, Inc., 513 F. Supp. 2d 229, 238 (E.D. Pa. 2007). Here, that method is plausibly the Excel spreadsheet the parties shared.

Thus, the Court will not grant Defendant's Motion for Summary Judgment on Plaintiff's breach of contract claim.

### B. Count II: Unjust Enrichment

Defendant asserts that he is entitled to summary judgment on the unjust enrichment claim because Plaintiff has not conferred a benefit on Defendant that Defendant retained.

A claim for unjust enrichment arises from a quasi-contract. Fleming Steel Co. v. Jacobs Eng'g Grp., Inc., 373 F. Supp. 3d 567, 603 (W.D. Pa. 2019) (citing Gutteridge v. J3 Energy Group, 165 A.3d 908, 916-17 (Pa. Super. Ct. 2017)). "A quasi-contract imposes a duty, not as a result of any agreement, whether express or implied, but in spite of the absence of an agreement, when one party receives unjust enrichment at the expense of another." Id. (quoting Stoeckinger v. Presidential Fin. Corp. of Del. Valley, 948 A.2d 828, 833 (Pa. Super. Ct. 2008)).

To establish a claim for unjust enrichment in Pennsylvania, a plaintiff must prove (1) a benefit conferred on the defendant by the plaintiff; (2) appreciation of such benefit by the defendant; and (3) acceptance and retention of such benefit under circumstances where it would be inequitable for the defendant to retain the benefit without payment to the plaintiff. MRO Corp.

v. Humana Inc., 383 F. Supp. 3d 417, 424 (E.D. Pa. 2019). "The most significant element is whether the enrichment of the defendant is 'unjust,' which requires that the plaintiff show that the defendant 'either wrongfully secured or passively received a benefit that . . . would be unconscionable for [it] to retain.'" Id. (quoting Sovereign Bank v. BJ's Wholesale Club, Inc., 533 F.3d 162, 180 (3d Cir. 2008)). "The doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff." Gutteridge, 165 A.3d at 917.

Defendant argues that he is entitled to summary judgment because Plaintiff has not "conferred" any benefit on Defendant that Defendant has "retained." (Doc. No. 18-1 at 13.) Defendant also states that Plaintiff's partial payments were refunded. (Id.) Plaintiff, on the other hand, claims that he paid Defendant $40,000 towards the purchase of the Magic Cards, and Defendant reneged on the agreement when he realized the cards were increasing in value. (Doc. No. 21 at 22.) Plaintiff asserts that Defendant benefited from the $40,000 in his possession for eleven months. (Id.) Plaintiff also argues that it would be unconscionable to allow Defendant to walk away from the transaction without any liability after having encouraged Plaintiff to sell his collection of cards to make the payments, accept $40,000 in payments, and decide to renege on the agreement once he realized he could get more money from someone else. (Id.)

Here, the Court will grant Defendant's Motion for Summary Judgment as it relates to the claim of unjust enrichment. While Plaintiff did confer a benefit to Defendant in the form of payments amounting to $40,000, both parties agree that Defendant returned that money to the Plaintiff. As a result, Defendant did not retain the benefit. The Court will therefore grant Defendant's Motion as it relates to Count II.

### C. Count III and Count IV: Contracts Implied in Fact/Law

As stated above, a breach of contract claim under Pennsylvania law requires a plaintiff to establish (1) the existence of a contract; (2) a breach of duty imposed by the contract; and (3) damages. See Legendary Art, LLC, 888 F. Supp. 2d at 582. The essential elements of a breach of an implied contract are the same as an express contract, the difference being that an implied contract is implied through the parties' conduct, rather than expressly written. ATG Tr. Co. v. Schlichtmann, 314 F. Supp. 3d 718, 725 (E.D. Pa. 2018).

"A contract implied in fact is an actual contract which arises when parties agree upon the obligation to be incurred, but their intention is not expressed in words and is, instead, inferred from their actions in light of the surrounding circumstances." Halstead v. Motorcycle Safety Found., Inc., 71 F. Supp. 2d 455, 459 (E.D. Pa. 1999). "A contract implied in fact has the same legal effect as any other contract. It differs from an express contract only in the manner of its formation." Universal Atl. Sys., Inc. v. Honeywell Int'l, Inc., 388 F. Supp. 3d 417, 428 (E.D. Pa. 2019).

"A contract implied in law, or quasi-contract, is a duty imposed by law upon a person who has obtained property or services under circumstances where reason, common sense and justice dictate that payment should be made therefor." Halstead v. Motorcycle Safety Found., Inc., 71 F. Supp. 2d 455, 459 (E.D. Pa. 1999). Contracts implied in law, or quantum meruit, are not

7

based on the intentions of the parties, and are not promises. Id. Rather, they are obligations "created by law for reasons of justice" and can be found absent a party's expression of assent and despite a party's contrary intention. Id. "In essence then, quasi-contract is a cause of action designed to cure unjust enrichment; to recover, a claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that would be unconscionable for the party to retain without compensating the provider." Id.

Defendant claims he is entitled to summary judgment on Counts III and IV because the parties did not reach an agreement as to essential terms of the alleged contract, including when Defendant was obligated to deliver the Magic Cards and when Plaintiff was obligated to pay for them. (Doc. No. 18-1 at 14.) As a result, Defendant argues there cannot be a contract implied in fact. (Id.) Additionally, Defendant asserts that Plaintiff cannot establish the existence of an implied contract because Defendant's acceptance, and refund of $40,000, does not give rise to a contract implied-in-law. (Id. at 15.) Conversely, Plaintiff claims that the parties entered into an express written agreement, as confirmed in written communications. Plaintiff also argues that there is a clear contract implied through the parties' conduct, including the parties exchange of a spreadsheet that defined the goods and the price, Plaintiff's payments on this agreement over the course of eleven months, and Defendant's acceptance of those payments. (Doc. No. 21 at 23.)

Here, a jury could find there was a contract implied in fact between the parties for the purchase of the Magic Cards based on the parties' conduct. As noted supra, the parties exchanged the Excel spreadsheet listing the Magic Cards that Plaintiff allegedly intended to purchase with their prices. The parties also regularly spoke about their alleged agreement over Facebook Messenger, discussing payments and timing of payments. As a result, the Court will deny Defendant's Motion for Summary Judgment as to Count III.

Conversely, the Court will grant the Motion as to Count IV. Contract implied in law, or quasi-contract, is a cause of action designed to cure unjust enrichment. As discussed supra, Plaintiff's unjust enrichment claim fails because Defendant did not retain a benefit from Plaintiff.

### D. Count V: Breach of Implied Covenant of Good Faith and Fair Dealing

In Pennsylvania, "[e]very contract imposes on each party a duty of good faith and fair dealing in its performance and enforcement." David v. Neumann Univ., 187 F. Supp. 3d 554, 560 (E.D. Pa. 2016) (quoting Kaplan v. Cablevision of PA, Inc., 671 A.2d 716, 722 (Pa. Super. Ct. 1996)). This obligation, however, is specifically tied to and is not separate from the express duties a contract imposes on the parties. Id. at 561. Thus, "a plaintiff cannot maintain an action for breach of the implied covenant of good faith and fair dealing where 'an adequate remedy exists under . . . [a] claim for breach of contract.'" Cessna v. REA Energy Coop., Inc., 258 F. Supp. 3d 566, 586 (W.D. Pa. 2017). See also Hudgins v. Travelers Home and Marine Ins. Co., No. 11-cv-882, 2013 WL 3949208, at *5 (E.D. Pa. July 31, 2013) (concluding a claim for breach of the implied covenant of good faith and fair dealing was subsumed by the breach of contract claim); Cummings v. Allstate Ins. Co., 832 F. Supp. 2d 469, 473 (E.D. Pa. 2011)

("under Pennsylvania law, there is no separate cause of action for breach of the duty of good faith and fair dealing and ... such a claim is subsumed within a breach of contract claim").

In this case, the Court will grant Defendant's Motion for Summary Judgment as to Count V. Plaintiff has alleged both a breach of contract claim and a breach of covenant claim, and the allegations in support of both claims are essentially the same. As the breach of covenant claim is subsumed within the breach of contract claim, the Court will grant Defendant's Motion as it pertains to Plaintiff's claim of breach of implied covenant of good faith and fair dealing.

### E. Count VI: Promissory Estoppel

Defendant claims that he is entitled to summary judgment on Plaintiff's promissory estoppel claim because Defendant did not make a definitive promise to Plaintiff.

Detrimental reliance is another name for promissory estoppel. Burton Imaging Grp. v. Toys "R" Us, Inc., 502 F. Supp. 2d 434, 438 (E.D. Pa. 2007). The elements of detrimental reliance are (1) a promise to a promisee, (2) which the promisor should reasonably expect will induce action by the promisee, (3) which does induce action, and (4) which should be enforced to prevent injustice to the promisee. Id. at 438-39. The first element requires an express promise between the promisor and the promisee, not merely a broad or vague implied promise. Id. The second requires that a promisor have a reasonably objective belief that a purported promise will induce action by the promisee. Id.

Defendant argues that he did not make an express promise "that is definite and certain enough for Plaintiff to rely upon." (Doc. No. 18-1 at 13.) Defendant concedes that "the parties generally expressed a desire to buy and sell the Cards[,]" but this desire is insufficient to support a promissory estoppel claim. (Id. at 13-14.) Plaintiff claims that Defendant made a clear promise to Plaintiff to sell the cards, and Defendant was acutely aware that Plaintiff would sell from his own collection to finance the transaction. (Doc. No. 21 at 21-22.)

Defendant cites Burton Imaging Group v. Toys "R" Us, Inc. to support his claim that his "expressed desire" in not sufficient for a claim of detrimental reliance. 502. F. Supp. 2d 434 (E.D. Pa. 2007). In Burton Imaging, the court found that the defendant's statement that it was "going to move ahead" insufficient to qualify as a promise for a claim of detrimental reliance. Id. at 539. This is because this phrase "did not express the intent of the parties with reasonable certainty" and "fails to indicate key terms such as payment to [the plaintiff] or duration of the . . . contract." Id.

In this case, Defendant did much more than simply state he was "going to move ahead." Here, the record reflects that Defendant took payments from Plaintiff, set payment terms and expectations, and worked with Plaintiff to make sure he held onto Magic Cards that constituted the alleged agreement. A reasonable jury could conclude that there was a promise that Plaintiff relied upon to his detriment. Thus, the Court will not grant Defendant's Motion for Summary Judgment as it pertains to Count VI.

### F. Count VII: Fraud in the Inducement

In Pennsylvania, a plaintiff claiming fraud in the inducement must establish the following elements: (1) a representation, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false, (4) with the intent of misleading another into relying on it, (5) justifiable reliance on the misrepresentation, and (6) the resulting injury was proximately caused by the reliance. Dunkin' Donuts Franchised Restaurants, LLC v. Claudia I, LLC, 998 F. Supp. 2d 383, 389 (E.D. Pa. 2014).

Defendant asserts that the alleged "inducement" cannot exist because there is no binding contract. (Doc. No. 18-1 at 19.) Defendant also claims that the alleged misrepresentations were made concerning the timeliness of payments, and the alleged misrepresentations occurred after the alleged transaction, and therefore were not "material to the transaction." (Id.) Plaintiff argues that Defendant knowingly misrepresented that he would provide Plaintiff with the collection of Magic Cards under the terms of their agreement. (Doc. No. 21 at 22.) In relying on these misrepresentations, Plaintiff sold his own collection to finance the transaction. (Id.)

Here, a reasonable jury could conclude that Defendant made the false representation to Plaintiff, either with knowledge of its falsity or recklessness as to whether it was false, that he would sell the cards to him. Plaintiff argues that the alleged misrepresentations were not only concerning timeliness of payments, but also that Defendant would provide Plaintiff with the collection of Magic Cards, making the representations "material to the transaction." A jury could also find that Plaintiff, in relying on Defendant's representation, sold off his own collection to finance the transaction. Because of this, the Court will not grant Defendant's Motion for Summary Judgment as it relates to Count VII.

### G. Count VIII: Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL")

Defendant argues that he is entitled to summary judgment on Plaintiff's UTPCPL claim because Plaintiff did not rely on any "deceptive acts or practices" to his detriment. (Doc. No. 18-1 at 21.)

The UTPCPL is designed to protect the public from fraud and deceptive business practices. Belmont v. MB Inv. Partners, Inc., 708 F.3d 470, 497 (3d Cir. 2013). The statute states

> [a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater.

73 Pa. Stat. Ann. § 201-9.2(a).

"The UTPCPL regulates an array of practices which might be analogized to passing off, misappropriation, trademark infringement, disparagement, false advertising, fraud, breach of contract, and breach of warranty." Belmont, 708 F.3d at 497. It lists twenty specific prohibited practices, see 73 Pa. Stat. Ann. § 201-2(4)(i)-(xx), and contains a "catch-all" provision, see id. § 201-2(4)(xxi), which provides a private right of action against a person "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." Id. "To establish liability under the UTPCPL's catchall provision a plaintiff must present evidence showing: (1) a deceptive act that is likely to deceive a consumer acting reasonably under similar circumstances; (2) justifiable reliance; and (3) that the plaintiff's justifiable reliance caused ascertainable loss." Slapikas v. First Am. Title Ins. Co., 298 F.R.D. 285, 292 (W.D. Pa. 2014). "Evidence of reliance must go beyond simply a causal connection between the misrepresentation and the harm; a plaintiff must show that he justifiably bought the product in the first place (or engaged in some other detrimental activity) because of the misrepresentation." Id. (internal quotations omitted.)

Defendant claims that this claim fails for the same reason as Count VII, namely that Plaintiff did not rely on any alleged "deceptive acts or practices" to his detriment. However, as noted supra, a jury could reasonably find that Plaintiff justifiably relied on a promise by Defendant to send the cards following his payments. A jury could also find that Defendant acted deceptively when he cancelled the alleged agreement with Plaintiff in May 2018. On May 29, 2018, Defendant sent Plaintiff a message stating that his payments were past due, and he was refunding Plaintiff's money, despite the parties' past conversations regarding a June 2018 deadline. (Doc. No. 18-3 at 1-3.) Therefore, the Court will deny Defendant's Motion for Summary Judgment as it pertains to Count VIII.

### H. Damages

Finally, Defendant argues that summary judgment on all claims is appropriate because Plaintiff cannot calculate damages with reasonable certainty. (Doc. No. 18-1 at 17-19.) Defendant asserts this is the case because Plaintiff cannot provide a date he could or would pay for the Magic Cards, or when Defendant was obligated to deliver the Cards. (Id. at 18.) As such, Defendant claims that Plaintiff cannot properly value the Cards because he cannot state the Cards' valuation date.

"In general, contract law espouses three distinct, yet equally important, theories of damages to remedy a breach of contract: "expectation" damages, "reliance" damages, and "restitution" damages." ATACS Corp. v. Trans World Commc'ns, Inc., 155 F.3d 659, 669 (3d Cir. 1998). The preferred basis of contract damages are expectation damages, which seek to protect an injured party's "expectation interest." Id. This is the interest in having the benefit of the bargain, and awards damages to put the aggrieved party in as good a position as would have occurred had the contract been performed. Id. "[E]xpectation damages are measured by the losses caused and gains prevented by defendant's breach, to the extent [that] are in excess of any savings made possible by nonperformance." Id. (internal quotations omitted.) If the court

BY THE COURT:

/s/ Joel H. Slomsky
JOEL H. SLOMSKY, J.

---

cannot measure lost profits with certainty, "contract law protects an injured party's reliance interest by seeking to achieve the position that it would have obtained had the contract never been made, usually through the recovery of expenditures actually made in performance or in anticipation of performance." Id. Finally, restitution damages "require the party in breach to disgorge the benefit received by returning it to the party who conferred it." Id.

In Pennsylvania, if damages are difficult to establish, an injured party must only prove damages with reasonable certainty, and doubts are construed against the breaching party. Id. "At a minimum, reasonable certainty embraces a rough calculation that is not too speculative, vague, or contingent upon some unknown factor." Id. (internal quotations omitted.) But applying the reasonable certainty standard does not preclude an award of damages because of some uncertainty as to the precise amount of damages incurred. Id. "What the law does require in cases of this character is that the evidence shall with a fair degree of probability establish a basis for the assessment of damages." Id.

In this case, it is clear based on the parties' expert reports that the Magic Cards can be valued with reasonable certainty. Both parties submitted expert reports with opinions on the value of the Magic Cards. (See Doc. Nos. 28-3, 28-4, 28-7, 28-8.) Regarding the date of the Cards' valuation, the parties discussed one, two, or three-year payment plans depending on what cards Plaintiff could sell to finance the transaction, and Plaintiff testified at his deposition that he had up to three years to complete the transaction. (Doc. No. 28-2, Plaintiff Dep. 68:8-11.) Therefore, if Defendant breached the alleged contract with Plaintiff, there would be sufficient evidence to establish a basis for the assessment of damages with a fair degree of probability. As damages could be calculated with reasonable certainty, the Court will not grant Defendant's Motion for Summary Judgment in its entirety.